STATE OF NEBRASKA, APPELLEE, V.
RONALD E. SHOCK, APPELLANT.
653 N.W.2d 16

Filed October 22, 2002. No. A-01-1345.

452

Gregory C. Damman, of Blevens & Damman, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and HANNON and MOORE, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Ronald E. Shock appeals from his convictions and sentences on one count of conspiracy to manufacture, distribute, or possess with intent to distribute methamphetamine and three counts of delivery of methamphetamine. On appeal, Shock challenges, inter alia, the district court's denial of his motion to suppress evidence seized upon the execution of a search warrant. Because we find that the affidavit in support of the search warrant was inadequate to support a finding of probable cause, we reverse the district court's denial of Shock's motion to suppress and remand the case for further proceedings.

## II. BACKGROUND

On November 24, 2000, the David City Police Department received an anonymous "Crimestoppers" tip. A report of the Crimestoppers tip indicates that the informant identified the "Suspect[s'] name[s]" as "Lynn & Ron unknown last name" and the suspects' address as "South 4th St. old Dolezal house" in

David City, Nebraska. The report recites the following information received from the informant:

> Received report of family living in old Dolezal house across the street from Cruiser's are known to be cooking meth in the house[.] Also known to have a place in the county but location unknown[.] RP advised there is a strong smell of anhydrous in the house and their daughter has a small baby[.] Daughter's name would be Kathryn. RP is concerned for the baby[.]

The report also indicates that the informant had called Crimestoppers previously about a different case and that the informant was instructed to call back after December 15 "to check on reward."

After receiving the Crimestoppers report, officers of the David City Police Department went to 164 South 4th Street in David City and retrieved 10 trash bags which had been placed away from the house for collection. Thomas Hayes, a drug investigator for the Nebraska State Patrol, participated in the review of the items found in the trash bags and prepared and submitted an affidavit requesting a search warrant for the residence. Investigator Hayes' affidavit contained a paragraph of background information relating his training and experience with the Nebraska State Patrol, specifically with drug law enforcement training, and a paragraph relating a description of the residence and the fact that the residence was occupied and under the control of "Lucetta L. Grimm and Ronald E. Shock." Because it is crucial to our resolution of the issue in this case, we set out most of the remainder of the affidavit as follows:

> 1. Affiant has personal knowledge that Ronald E. Shock is a convicted felon, having been convicted for manufacture of Methamphetamine in the State of Missouri, and currently on probation for this charge. This knowledge having been gained by doing a criminal history background investigation and by receiving a copy of the probation order on November 28, 2000.
>
> 2. Affiant was advised by Stephen M. Sunday, Chief of Police, David City Police Department, that the Butler County Crime Stoppers Program received a call from a concerned citizen on November 24, 2000, that stated the

following information, to-wit: "of a family living in the old Dolezal house across the street from Cruiser's are known to be cooking meth in the house. Also known to have a place in the county but location unknown. Advised there is a strong smell of Anhydrous in the house and their daughter has a small baby. Daughter's name is Kathryn. The calling party is concerned for the baby." Affiant knows from personal knowledge, that Lucetta L. Grimm is the daughter of Jeanie Dolezal, that the house is located across the street east, and half a block north of Cruiser's Drive Inn. Cruiser's Drive Inn is located at the intersection of 4th and Nebraska Streets, and that 164 S. 4th Street is the second house north of Nebraska Street, along the east side of 4th Street. Affiant has personal knowledge that a Cathryn Grimm lives at this residence, having a date of birth of May 1, 1987.

3. Affiant, accompanied by Inv. Kirk Slaughter of the Nebraska State Patrol, and Stephen M. Sunday, Chief of Police, David City Police Department, on the 27th day of November, 2000, at approximately 11:45 PM, removed approximately ten black colored plastic trash sacks that were located approximately three to four feet west of the public alley that is located on the east side of said residence. The trash bags were found sitting in the open next to two trash burn barrels. The plastic trash bags were also located south of the garage that is detached from the residence, and positioned next to the public alley. Affiant's training and experience indicates that individuals engaged in the manufacturing of Methamphetamine will often discard the fruit of their efforts into trash bags so has [sic] to have a garbage collection services [sic] remove these items from the property. Affiant, along with Chief Sunday and Inv. Slaughter, transported the trash bags to the David City Police Department. Once there, affiant, Chief Sunday, Officer Darren Brown of the David City Police Department and Inv. Slaughter began an inspection of the trash bags and their contents. Within the ten trash bags, affiant discovered the following items, to-wit: coffee filters stained with a residue, a cooking thermometer, numerous strips of

aluminum foil that had a burned residue, packaging that had contained lithium batteries, the empty casing of lithium batteries and metal strips that had been removed from inside said casings, a two liter plastic bottle labeled Dr. Pepper that contained a white residue and smelled of ether, numerous used syringses [sic], plastic tubing, receipts for containers of Heet and suphedrine, numerous empty suphedrine boxes and empty blister pill packs that had contained suphedrine tablets, documents showing that Ronald E. Shock and Lucetta L. Grimm having [sic] received mail at this residence of 164 S. 4th Street, paycheck stubs from Ronald E. Shock, numerous empty cans of automotive starting fluid that had hole [sic] punched into the cans near the bottom of the cans, one glass jar with residue, coffee filters that were soiled and putting off a strong [odor] of ether, packaging for safety glasses, and latex gloves and protective masks[.]

Your Affiant believes that the above does constitute probable cause for the issuance of a search warrant to search the residence, outbuildings, and vehicles under the control of Lucetta L. Grimm and Ronald E. Shock[.]

On November 28, 2000, the county court granted a search warrant on the basis of the above affidavit. The warrant was executed on the same date, and approximately 32 items were seized from the residence. Four people present at the residence, including Shock, were arrested.

On December 20, 2000, Shock was charged by information with one count of conspiracy to manufacture, distribute, or possess with intent to distribute methamphetamine. On February 13, 2001, an amended information was filed, adding three counts of manufacturing, distributing, delivering, dispensing, or possessing with intent to distribute methamphetamine. On March 6, Shock filed a motion to suppress the physical evidence seized from the residence, asserting the affidavit was insufficient to support a finding of probable cause for the issuance of a search warrant.

On April 3, 2001, the district court conducted a hearing on Shock's motion to suppress. Investigator Hayes testified, and the court received various exhibits, including a copy of the affidavit and warrant, a copy of the Crimestoppers report, and criminal

history information concerning Shock. On May 1, the court entered an order denying the motion to suppress. In so ruling, the court specifically found that the Crimestoppers informant was "a reliable, citizen informant" and that the affidavit related personal observations of the informant as well as the independent investigation of the police.

On August 16, 2001, a jury returned verdicts of guilty on all four counts. On November 6, Shock was sentenced to a term of 10 to 20 years' imprisonment on each count, with the sentences on counts one, three, and four to be served concurrently and the sentence on count two to be served consecutively to the sentences on the other counts. Shock has now appealed his convictions and sentences.

## III. ASSIGNMENTS OF ERROR

On appeal, Shock has assigned eight errors challenging the district court's rulings on various motions, the jury instructions given by the court, and his convictions and sentences. Because our resolution of Shock's assignment of error that the court erred in overruling his motion to suppress resolves this appeal, we limit our discussion to that one assignment of error.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Ortiz,* 257 Neb. 784, 600 N.W.2d 805 (1999). To the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. *Id.*

### 2. PROBABLE CAUSE FOR ISSUANCE OF SEARCH WARRANT

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *Id.; State v. Lytle,*

255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson,* 256 Neb. 133, 589 N.W.2d 108 (1999). Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Ortiz, supra.* In evaluating probable cause for the issuance of a search warrant, a magistrate must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before the magistrate, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Lytle, supra.*

Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time. *State v. Ortiz, supra.* Probable cause to search is determined by a standard of objective reasonableness, that is, whether known facts and circumstances are sufficient to warrant a person of reasonable prudence in a belief that contraband or evidence of a crime will be found. *Id.*

As a general rule, an appellate court is restricted to consideration of the information and circumstances found within the four corners of the affidavit. *Id.* The duty of the reviewing court is to ensure that the magistrate issuing a search warrant had a substantial basis for determining that probable cause existed. *State v. Lytle, supra.*

### 3. SUSPECT'S CRIMINAL HISTORY

As noted above in the factual background section, the first paragraph of the affidavit purporting to establish probable cause to search Shock's residence contained representations about Shock's criminal history. We conclude that the representations in this paragraph consisted of material misrepresentations which must be excised from the affidavit in assessing the totality of the circumstances and assessing whether the affidavit supports a finding of probable cause.

The U.S. Supreme Court, in *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), has indicated that in order to invalidate a warrant on the basis of material

misrepresentations, a defendant must show both that the affiant made a deliberate falsehood or acted with reckless disregard for the truth and that the challenged representation is "material," that is, necessary to a finding of probable cause. See *State v. Spidel*, 10 Neb. App. 605, 634 N.W.2d 825 (2001). The Nebraska Supreme Court has held that omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit. *Id.*

The affidavit in the present case represented that Shock is a convicted felon, that Shock had previously been convicted for manufacturing methamphetamine in Missouri, and that Shock was currently on probation for manufacturing methamphetamine in Missouri. The affidavit further indicated that Investigator Hayes' representations in this regard were based on a criminal history background investigation and a copy of the probation order received by Investigator Hayes. The record, however, indicates that Shock's prior conviction was not for manufacturing methamphetamine, but, rather, was for possession of cocaine.

At the hearing on Shock's motion to suppress, the court received a copy of a criminal history background investigation report (NCIC report) and a copy of the probation order relied on by Investigator Hayes. The NCIC report indicates that Shock was convicted in Missouri for a felony charge of "Dist del manuf contr sub." The probation order, however, indicates that the conviction was for "Possession of a controlled substance (cocaine)." Investigator Hayes testified that he specifically relied on the probation report when completing the affidavit. Additionally, in the affidavit itself, Investigator Hayes specifically represented that the probation order was relied on. Investigator Hayes acknowledged at the hearing that he did not have any documents which would show that Shock had been convicted of manufacturing methamphetamine.

We conclude that the misrepresentation concerning Shock's prior conviction and probation was made, at a minimum, with reckless disregard for the truth. See *id.* Investigator Hayes asserted, both in the affidavit and in his testimony during the hearing on the motion to suppress, that he had specifically relied on

the NCIC report and on the probation order in making the representations concerning Shock's criminal history. The probation order indicates, in plain English, that Shock's prior felony conviction in Missouri was not for manufacturing methamphetamine, as asserted in the affidavit, but was for possession of cocaine.

We also conclude that the misrepresentations were material in nature. The fact that Shock's prior conviction and probation are for possessing cocaine tends to weaken or damage the inferences which can be logically drawn from the assertions in the affidavit that Shock had previously been convicted of manufacturing methamphetamine, the very charge for which the affidavit sought permission to search for evidence. See *id.*

In ruling on the motion to suppress, the district court specifically relates that "[t]he state patrol also had information that the defendant had been convicted of methamphetamine manufacture in Missouri." To the extent this representation in the district court's order is a factual determination, it is clearly wrong, based on the record presented to this court. The most that can be considered an accurate statement in the paragraph of the affidavit concerning Shock's criminal history is that "Ronald E. Shock is a convicted felon" with a prior drug-related conviction.

The Nebraska Supreme Court has held that without proof of present criminal activity, the information about a suspect's prior criminal activity lacks temporal significance and does not by itself create probable cause to believe that the suspect is currently engaged in the same genre of criminal conduct or any criminal conduct which led to his or her prior conviction. See *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999). The fact that Shock has a prior felony conviction may be considered relevant information but cannot support a finding of probable cause by itself.

### 4. RELIABILITY OF INFORMANT

We next address the paragraph of the affidavit relating the information received from the Crimestoppers informant. The specific issue we must address is whether the Crimestoppers informant in the present case was, as the district court specifically found, a reliable citizen informant or whether the affidavit otherwise establishes the informant's reliability. Our review of

the record leads us to conclude that the district court was clearly wrong in finding that the information given to Crimestoppers was from a reliable citizen informant, and we conclude that the affidavit fails to establish either the basis of the informant's knowledge or a basis for determining the reliability of the information received from the informant.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). An affidavit in support of the issuance of a search warrant must affirmatively set forth the circumstances from which the status of the informant can reasonably be inferred. *Id.* An appellate court is generally restricted to consideration of the information and circumstances contained within the four corners of the affidavit underlying a search warrant. See *id.*

### (a) Basis of Informant's Knowledge

The district court made a specific finding that "the affidavit shows that the tipster had related personal observations of the residence and the smell of anhydrous." Our review of the affidavit, however, leads us to conclude that this finding is clearly wrong. The affidavit, in fact, makes no representation whatsoever concerning whether the informant had related personal observations or was relating information received through some other source. No representation in this regard is made by Investigator Hayes. A review of the affidavit, rather, leaves the reader to speculate as to where the informant obtained information that criminal activity might be occurring in the residence. As such, the affidavit fails to set forth facts demonstrating the basis of the informant's knowledge.

### (b) Reliability of Informant

The district court also made a specific finding that the Crimestoppers informant was "a reliable, citizen informant." Upon our

review of the record, however, we conclude that the district court was also clearly wrong in finding that the informant was a citizen informant. In fact, we conclude that the affidavit fails to establish the reliability of the Crimestoppers informant.

 Among the ways in which the reliability of an informant may be established are by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *Id.*

It is clear there is nothing in the affidavit indicating that the informant in the instant case had given reliable information in the past or that the informant's statement was against his or her penal interest. Thus, the question is whether the affidavit supports a finding of reliability by establishing that the informant is a citizen informant or by establishing that a police officer's independent investigation established the reliability of the information.

### (i) Citizen Informant

 The status of citizen informant cannot attach unless the affidavit used to obtain a search warrant *affirmatively* sets forth the circumstances from which the existence of the status can reasonably be inferred. *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). It is important to distinguish the police tipster, who acts for money, leniency, or some other selfish purpose, from the citizen informer, whose only motive is to help law officers in the suppression of crime. *Id.* A citizen informant is *without motive* to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.* A citizen informant is a citizen who purports to have been the witness of a crime who is motivated by good citizenship and acts *openly* in aid of law enforcement. *Id.*

 The Nebraska Supreme Court has found that informants using the Crimestoppers program *can* enjoy the status of citizen informant but that such status is not always conferred on such informants. See, *id.*; *State v. Detweiler*, 249 Neb. 485, 544

N.W.2d 83 (1996). The fact that an informant is an anonymous informant using the Crimestoppers program is but one element of the totality of the circumstances in assessing the reliability of the informant. See *State v. Lytle, supra.*

In *State v. Lytle,* 255 Neb. at 748, 587 N.W.2d at 672, the Supreme Court reviewed an affidavit which specifically disclosed that persons using the Crimestoppers program " 'may be granted a reward if the information proves to be true and accurate.' " The court noted that such a fact indicates that an informant using the Crimestoppers program may be motivated by money, rather than solely by good citizenship, and might be prompted to make a report based on only the barest suspicion of criminal activity, which suspicion might not cause the informant to make a report without the possibility of reward. See *State v. Lytle, supra.* Thus, such an informant would have a motive to exaggerate, falsify, or distort the facts to serve his or her own ends. *Id.*

In the present case, the affidavit does not indicate whether the informant making the Crimestoppers report could be granted a reward. However, at the hearing on the motion to suppress, the district court received a copy of the Crimestoppers report which specifically indicates that the informant was told to call back to receive information about whether a reward would be paid. Additionally, Investigator Hayes further testified that the Crimestoppers program advertises that a reward is possible.

As noted above, an appellate court generally is limited to reviewing the information and circumstances contained within the four corners of the affidavit. However, the law governing search warrants also indicates that the affidavit must affirmatively establish the circumstances which support a finding that an informant is a citizen informant. In the present case, the information concerning the possibility of reward was omitted from the affidavit, although such possibility appears on the very Crimestoppers report which was quoted at great length in the affidavit. Whether we consider this omission as a material omission pursuant to our analysis above concerning material omissions and misrepresentations, or whether we consider the affidavit as merely being insufficient to establish the status of citizen informant for failing to represent that no reward was at issue, the fact that the informant did enjoy the possibility of obtaining a

reward must be considered in assessing the reliability of the informant. To rule otherwise would suggest that merely omitting reward information concerning Crimestoppers informants from affidavits could artificially enhance the informants' credibility. As such, we conclude that the district court's factual finding that "[t]here is no evidence to suggest that the informant was motivated by a promise of leniency or financial benefit" is also clearly wrong.

### (ii) Independent Police Corroboration

A police officer's independent investigation may establish the reliability of an informant. See *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *disapproved in part on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). In the present case, however, the affidavit fails to indicate any significant independent corroboration of material facts.

A reading of the affidavit indicates that Investigator Hayes was able to verify the identity of the people residing at the specified location and that there was indeed a house at the specified location. The Nebraska Supreme Court has previously held that a suspect's address and physical description are neutral facts which, without more, do not imply criminality and support corroboration of an informant's reliability. See *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999). Corroboration of this information does not generate enough information to establish probable cause that a suspect has committed, or is about to commit, a crime. See *id.*

The district court found that the information given by the Crimestoppers informant was "supported by the independent investigation of the state patrol with respect to defendant's prior criminal record and the inspection of the trash discarded outside the residence." We have already discussed above the clearly erroneous findings by the district court concerning the investigation of Shock's prior criminal record. Additionally, as is discussed more fully below, the representations in the affidavit concerning the investigation of the trash do not provide a basis for finding probable cause. The district court's finding to the contrary concerning the reliability of the Crimestoppers informant is clearly wrong.

*(iii) Totality of Circumstances Concerning Reliability*

We conclude that the district court was clearly wrong in finding that the Crimestoppers informant was a citizen informant. We conclude that the district court was clearly wrong in finding that the informant's reliability was established through the independent investigation of law enforcement officers. The affidavit in the present case fails to establish any basis for determining the reliability of the informant's report. The Supreme Court has previously held that information received from Crimestoppers tips can be a useful tool for law enforcement, but, standing alone, without corroboration of details by law enforcement, is insufficient to establish the informant's reliability or establish probable cause. See *State v. Lytle, supra.* The mere confirmation of a suspect's address and utilities is insufficient to establish the necessary reliability. See *id.*

### 5. INVESTIGATION OF TRASH

The final significant portion of the affidavit is the paragraph concerning law enforcement's investigation of materials found in trash bags outside Shock's residence. We conclude that although the affidavit indicates a wide variety of items were found in the trash, the affidavit fails to indicate what significance any of the items possesses toward a finding of probable cause. As such, we find the information in this paragraph also inadequate to establish probable cause.

As set forth more fully above in the factual background section, this paragraph of the affidavit indicates that law enforcement officers removed 10 trash bags from near Shock's residence and details a long list of items found when the officers were investigating the trash bags. What is lacking, however, is any assertion or representation that any of the items found in the trash are commonly, or ever, used in the manufacture of methamphetamine or are otherwise indicative of criminal conduct.

The affidavit indicates that "[a]ffiant's training and experience indicates that individuals engaged in the manufacturing of Methamphetamine will often discard the fruit of their efforts into trash bags so has [sic] to have a garbage collection services [sic] remove these items from the property." To the extent "the fruit of their efforts" is apparently intended to refer to the materials used

in manufacturing methamphetamine, rather than the end product itself as a common reading would indicate, the affidavit fails to indicate in any way what such materials are. Further, although the affidavit then details a variety of items found in the trash, the affidavit never suggests any of the items are actually known to be used in the manufacture of methamphetamine.

To allow an inference that such is the case would allow law enforcement officers to assert that individuals engaged in the manufacture of methamphetamine generally discard the remains of the materials used in such manufacture, then to assert that any common item was found in the trash, and to thus aver that the two assertions, taken together, are sufficient to establish probable cause. For example, if the list of items found in Shock's trash had instead consisted of empty cardboard boxes, empty milk containers, and empty bread wrappers, there is no doubt that the affidavit would fail to establish probable cause without some assertion that such items are actually used in the manufacture of methamphetamine. We are aware of no authority which allows the material elements of manufacturing methamphetamine to be a matter of judicial notice, and without some indication in the affidavit that the items found are so used, the affidavit is inadequate.

In addition, the affidavit repeatedly asserts that items such as coffee filters or aluminum foil were stained with "a residue" but makes no assertion that the "residue" is in any way suspicious or other than coffee or common cooking residue. The affidavit also asserts that "numerous" syringes and "numerous" empty suphedrine boxes were found, but does not give any indication of how many of either is considered by Investigator Hayes to be "numerous." The district court's factual finding that the affidavit indicates that the trash "revealed items which the officers thought, based on training and experience, were used in the manufacture of methamphetamine" is clearly wrong. The affidavit contains no such assertion.

## 6. TOTALITY OF CIRCUMSTANCES

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" rule whereby the question is whether, under the totality of the

circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Ortiz,* 257 Neb. 784, 600 N.W.2d 805 (1999).

The affidavit in the present case reveals only that law enforcement received a tip, the reliability of which cannot be determined from the affidavit; that Shock has a prior felony conviction; that Shock in fact lived in the house searched; and that Shock's trash contained a long list of items, the suspect nature of which was never established in the affidavit. The district court was clearly wrong in finding that the State established that Shock had a prior criminal conviction for manufacturing methamphetamine, in finding that there was a basis for the Crimestoppers informant's knowledge, in finding that the Crimestoppers informant was a citizen informant, in finding that the Crimestoppers informant's reliability was otherwise established through the independent investigation of law enforcement, and in finding that the affidavit indicated that items found in the trash were thought to be used in the manufacture of methamphetamine. We cannot say that the totality of the circumstances in the present case established probable cause for the issuance of a search warrant. As such, the search warrant was constitutionally defective. See *State v. Ortiz, supra.*

## 7. GOOD FAITH

Even though the search warrant was invalid, the search need not result in exclusion of the challenged evidence if the officers executing the warrant relied in good faith on the warrant. *State v. Davidson,* 260 Neb. 417, 618 N.W.2d 418 (2000). Suppression remains an appropriate remedy if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid. *Id.*

Our discussion above indicates that at a minimum, the warrant was issued based in part on misleading information which Investigator Hayes should have known was false, because the affidavit asserts that Shock had been convicted of and was serving a term of probation for a charge of manufacturing methamphetamine, which was not a true assertion. In addition, our discussion above indicates that the affidavit is so lacking in indicia of probable cause that official belief in its existence is unreasonable. As such, we conclude that the "good faith" exception does not serve to prevent the suppression of the evidence obtained as a result of the constitutionally invalid search warrant.

### 8. RESOLUTION

The district court's order denying Shock's motion to suppress is reversed. As such, the case is remanded for further proceedings consistent with this opinion.

### V. CONCLUSION

The district court's order denying Shock's motion to suppress is reversed. The case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.