779 N.W.2d 362 (2010)
279 Neb. 576
STATE of Nebraska, appellee,
v.
Francis L. SEBERGER, appellant.
No. S-09-476.
Supreme Court of Nebraska.
March 19, 2010.
*363 James R. Mowbray and Jeffery A. Pickens, of Nebraska Commission on Public Advocacy, for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Francis L. Seberger was convicted of first degree murder in connection with the death of his wife, Debbie Seberger (Debbie), and sentenced to life imprisonment. This is Seberger's direct appeal from his conviction and sentence. The primary issue in this appeal is whether the trial court erroneously failed to make specific findings regarding the voluntariness of some of Seberger's statements to police.

BACKGROUND
Taken in the light most favorable to the State,[1] the record establishes the following sequence of events, which began on May 31, 1997: Seberger and Debbie were estranged, and Seberger had called Debbie's residence several times that evening. Seberger went to a convenience store and filled a can with gasoline. A short time later, two calls were received by the 911 emergency dispatch service. The first was from Debbie, who reported that someone was trying to force entry into her residence. The second was from Debbie's neighbor, who reported a fire at Debbie's residence.
Police and fire department personnel responded, and police encountered Seberger driving away from the residence when they arrived. A fire in the house was quickly suppressed. Debbie was found in the front yard with severe burns, and Seberger made several angry remarks toward her. Seberger had also been burned. Investigators determined that the fire was caused by the ignition of a flammable liquid, such as gasoline, and gasoline was found on Debbie's clothing, Seberger's clothing, and carpeting from the residence. Debbie told a nurse that someone had poured gasoline on her. During subsequent interviews with law enforcement, Seberger admitted that he had sprayed Debbie with gasoline, although he did not clearly admit to igniting the gasoline.
Debbie died on July 1, 1997, as a result of her burn injuries. Seberger was charged by information with arson in the first degree and first degree murder, on both premeditated and felony murder theories. Seberger filed a motion to suppress statements that he had made in the ambulance *364 and hospital on the night of the incident, in an interview with police at the hospital on June 2, and in an interview with police and fire investigators on June 4. Specifically, Seberger asked for a hearing "for the purpose of determining which, if any, of his pretrial admissions or statements were given voluntarily, intelligently, or understandingly" and to suppress "any and all pretrial statements, admissions, [or] confessions ... which were not given voluntarily, intelligently, or understandingly, or which were obtained in violation of his rights under the Fourth, Fifth or Fourteenth Amendments to the United States Constitution."
A hearing was held, and the trial court sustained Seberger's motion in part, and overruled it in part. The court suppressed the statements Seberger made on May 31, 1997, "finding that in the totality of the circumstances, Miranda wasn't given and that the statements were not freely and voluntarily and intelligently made, so those [statements] will be suppressed." But with respect to the later statements, the court found that "Miranda was given, that the waiver was freely, voluntarily and intelligently made, and those statements are not suppressed." The court made a journal entry to much the same effect, finding that on May 31, "the required constitutional rights were not afforded [Seberger] nor where [sic] the statements freely, voluntarily, or intelligently made," but overruling the motion to suppress the June 2 and 4 statements.
Seberger waived his right to a jury trial, and the case was tried to the court. Consistent with its pretrial rulings, the court overruled Seberger's objections at trial to evidence of his June 2 and 4, 1997, statements to police. Seberger did not testify in his own defense. Seberger asked the court to find him guilty of manslaughter, not murder. Nonetheless, while Seberger was found not guilty of arson, he was convicted of premeditated first degree murder. After a capital sentencing hearing, Seberger was sentenced to life imprisonment.
The State attempted to appeal from the sentencing panel's decision not to impose the death penalty, but we found that the State had no statutory authority to do so and dismissed the State's appeal.[2] Seberger filed a brief of appellee, through trial counsel, but did not perfect an appeal of his own. Seberger filed a motion for postconviction relief through new counsel. The postconviction court found that Seberger had been denied his right to a direct appeal by ineffective assistance of direct appeal counsel and awarded Seberger a new direct appeal. This is that appeal.

ASSIGNMENTS OF ERROR
Seberger assigns, consolidated and restated, that
(1) the district court erred by failing to make a determination with respect to the voluntariness of Seberger's June 2 and 4, 1997, statements to his interrogators, and for overruling his objections when evidence and testimony concerning those statements were received at trial, in violation of his rights as guaranteed by the 5th and 14th Amendments to the U.S. Constitution; and
(2) he was denied effective assistance of counsel because his trial counsel (a) advised him to waive his right to a jury trial, (b) advised him not to testify at trial, and (c) failed to offer evidence that Debbie sold oil-based candles and had an inventory of such candles that could have been the ignition source of the fire.

*365 STANDARD OF REVIEW
In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.[3]

ANALYSIS
Seberger's first assignment of error is directed at the trial court's purported failure to rule on the voluntariness of his June 2 and 4, 1997, statements to authorities. To be admissible, a statement or confession of an accused must have been freely and voluntarily made.[4] And a defendant who objects that a statement was involuntary is entitled to a hearing in which both the underlying factual issues and the voluntariness of the statement are actually and reliably determined.[5]
In this appeal, Seberger does not argue that his statements were actually involuntary. Rather, he argues only that the trial court failed to make the necessary finding that his statements were voluntary, so the case should be remanded to the district court for additional findings on voluntariness. He claims that the trial court's ruling addressed his Miranda rights,[6] but not voluntariness. And he argues that under State v. Kula,[7] the court was required to determine whether his statements were voluntary.
We find no merit to Seberger's argument. First, we do not agree with his interpretation of the trial court's ruling on his motion to suppress. The trial court's focus on Miranda was hardly inconsistent with a determination of whether the statements were voluntary. It is a violation of the Due Process Clause to use a defendant's involuntary statement against him at a criminal trial,[8] while the constitutional guidelines established by Miranda are intended to secure a defendant's Fifth Amendment right against self-incrimination.[9] But the U.S. Supreme Court has explained that Miranda safeguards are intended to ensure that
the police do not coerce or trick captive suspects into confessing, to relieve the "`inherently compelling pressures'" generated by the custodial setting itself, "`which work to undermine the individual's will to resist,'" and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.[10]
Thus, while compliance with Miranda does not conclusively establish the voluntariness of a subsequent confession, "cases in which a defendant can make a colorable argument *366 that a self-incriminating statement was `compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare."[11] So the trial court's discussion of whether Seberger had been given Miranda warnings, and properly waived them, was entirely relevant to evaluating the voluntariness of Seberger's statements.
And when the trial court's ruling is read as a whole, it is clear that the court considered and rejected Seberger's challenge to the voluntariness of his statements. The U.S. Supreme Court has explained that although a trial court's conclusion that a statement was voluntary must be clear from the record, the U.S. Constitution does not require the court to write formal findings of fact or write an opinion.[12] Seberger's motion, and the arguments of counsel, obviously raised the question of voluntariness. And with respect to the May 31, 1997, statements that the court did suppress, the court explained that it was considering "the totality of the circumstances whether those statements were freely, voluntarily and intelligently made." And the court concluded both that "Miranda wasn't given and that the statements were not freely and voluntarily and intelligently made, so those [statements] will be suppressed."
It is impossible to conclude that the trial court excluded the May 31, 1997, statements because they were not voluntary, but then forgot to consider the voluntariness of the June 2 and 4 statements. Instead, it is apparent that when the context of the motion to suppress and suppression hearing are considered, the court's denial of the motion necessarily rejected Seberger's objection that his statements were not voluntary.[13]
Seberger also argues that the trial court's ruling was insufficient because it did not make detailed findings of historical fact. He correctly notes that in State v. Osborn,[14] we stated that even though no statute required an articulation of the factual conclusions upon which the denial of a motion to suppress was based, that did not mean that "other considerations" may not require findings of fact.[15] So, noting that "findings of fact may be indispensable to a proper appellate review,"[16] we held that trial courts were to "articulate ... their general findings when denying or granting a motion to suppress."[17]
But we also stated that the "degree of specificity required will vary, of course, from case to case."[18] And we found in Osborn that our review of the matter could proceed on the record before us, concluding that there was no clear error in the "factual findings and legal conclusions implicit in the district court's decision."[19]
Obviously, for the reasons articulated in Osborn, it is better practice for trial courts to articulate their findings of fact and law completely, on the record. But Osborn *367 does not require reversal or remand of every case in which a trial court's findings could have been more complete. And more pertinent to this case, Osborn plainly acknowledges that the extent to which the trial court should articulate its findings is dependent upon the circumstances of the case. In Osborn, the concern we expressed was that "we might not know whether the trial court rejected a defendant's factual contentions or had acted on some legal basis."[20] This was because in Osborn, at the hearing on the motion to suppress, there were sharp conflicts in the testimony and evidence regarding the circumstances of the defendant's interrogation.[21]
The same cannot be said in this case, where the circumstances of the interview were largely undisputed. Seberger has directed us to no meaningful dispute regarding the historical facts, nor is one apparent from the record. And whether those facts suffice to meet constitutional standards is a question of law.[22] Under the circumstances, the trial court's ruling was sufficient, and our review of the record reveals no basis to disagree with the trial court's conclusion.
Nor does State v. Kula[23] support Seberger's position. In Kula, the statements at issue had been made to a private citizen, not law enforcement. Although the defendant challenged the voluntariness of the statements, the trial court did not rule on the issue, because it found that no hearing or determination of voluntariness was required for statements made to private citizens. But on appeal, we explained that to be admissible, an accused's statements to a private citizen must be voluntary. So, we concluded that the trial court had erred in failing to make a threshold ruling on the voluntariness of the defendant's statements.[24] But the issue in Kula was not the sufficiency of the trial court's ruling on voluntarinessit was the trial court's clear decision, on the record, not to make a ruling on voluntariness.[25] And, as explained above, the court's ruling on voluntariness was sufficient in this case.[26] Therefore, we find no merit to Seberger's first assignment of error.
Seberger's second assignment of error involves claims of ineffective assistance of trial counsel. Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question.[27] Seberger concedes that the record in this appeal is insufficient to evaluate his claims, and we agree. The State argues that the record is sufficient to conclude that Seberger was not prejudiced by his waiver of a jury trial, because Seberger's strategy of admitting to manslaughter was more likely to succeed at a bench trial, and the result of a jury trial would likely have been the same.
But counsel's advice to waive a jury trial can be the source of a valid claim of ineffective assistance, not only when the advice is unreasonable, but also when counsel interferes with his or her client's freedom to decide to waive a jury *368 trial.[28] Even if we could conclude on this record that trial counsel's advice was reasonable, we cannot determine whether trial counsel interfered with Seberger's freedom to decide to waive a jury trial. And the record is plainly insufficient to evaluate the strategic choices implicated by Seberger's other ineffective assistance claims. Therefore, we do not consider his final assignment of error.

CONCLUSION
We find no merit to Seberger's argument that the trial court erroneously failed to consider the voluntariness of his June 2 and 4, 1997, statements. And the record is insufficient to evaluate his claims of ineffective assistance of trial counsel. We affirm Seberger's conviction and sentence.
AFFIRMED.
NOTES
[1] See State v. Edwards, 278 Neb. 55, 767 N.W.2d 784 (2009).
[2] See State v. Seberger, 257 Neb. 747, 601 N.W.2d 229 (1999).
[3] See State v. Goodwin, 278 Neb. 945, 774 N.W.2d 733 (2009).
[4] State v. Faust, 265 Neb. 845, 660 N.W.2d 844 (2003), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[5] See id.
[6] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[7] State v. Kula, 260 Neb. 183, 616 N.W.2d 313 (2000).
[8] Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).
[9] Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).
[10] Berkemer v. McCarty, 468 U.S. 420, 433, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (emphasis supplied).
[11] Id., 468 U.S. at 433 n. 20, 104 S.Ct. 3138. Accord, Dickerson, supra note 9; U.S. v. Guanespen-Portillo, 514 F.3d 393 (5th Cir. 2008).
[12] See, Mincey, supra note 8; Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).
[13] See Mincey, supra note 8.
[14] State v. Osborn, 250 Neb. 57, 547 N.W.2d 139 (1996).
[15] Id. at 66, 547 N.W.2d at 145.
[16] Id.
[17] Id. at 67, 547 N.W.2d at 145.
[18] Id.
[19] Id.
[20] Id.
[21] See id.
[22] See Goodwin, supra note 3.
[23] See Kula, supra note 7.
[24] See id.
[25] See id. See, also, Sims, supra note 12.
[26] See Mincey, supra note 8.
[27] State v. Sellers, 279 Neb. 220, 777 N.W.2d 779 (2010).
[28] See State v. Dean, 264 Neb. 42, 645 N.W.2d 528 (2002).