IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. FITZGERALD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
JOSEPH FITZGERALD, APPELLANT.

Filed January 14, 2014.    No. A-13-142.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Nancy K. Peterson for appellant.

Jon Bruning, Attorney General, and Carrie A. Thober for appellee.

INBODY, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Joseph Fitzgerald appeals from his conviction in the district court for Lancaster County for possession of a controlled substance. Fitzgerald alleges that the trial court erred in overruling his motion to suppress evidence seized during the execution of a search warrant. He contends that the affidavit in support of the search warrant contained material misrepresentations and/or omissions and was insufficient to establish probable cause. Fitzgerald also alleges that the trial court erred by failing to make factual findings when overruling his motion to suppress. We find no merit to Fitzgerald's assignments of error, and therefore, we affirm his conviction.

### BACKGROUND

On March 20, 2012, members of the Lincoln-Lancaster County narcotics task force executed a search warrant at Fitzgerald's residence, located at 1609 D Street, apartment No. 10, Lincoln, Nebraska. The task force entered the apartment and observed Fitzgerald and another individual rush toward the bathroom. Officers followed Fitzgerald into the bathroom where they observed him trying to dispose of items by flushing them down the toilet. Officers handcuffed

- 1 -

Fitzgerald and searched him. During the search, the officers located a plastic baggie in Fitzgerald's front pants pocket that contained nine individually wrapped pieces of crack cocaine. In addition, the officers observed a pipe used for ingesting crack cocaine and a plastic baggie in the toilet.

Fitzgerald was charged with possession of a controlled substance pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2012) and with being a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008). He filed a motion to suppress all evidence seized as a result of the search of his apartment conducted pursuant to the search warrant. The motion alleged that the affidavit in support of the search warrant was factually insufficient and lacked probable cause to justify the issuance of the warrant.

A hearing was held on Fitzgerald's motion to suppress. Although Fitzgerald's motion to suppress did not allege that the search warrant affidavit contained material misrepresentations or omissions, the trial court permitted Fitzgerald, over the State's objection, to present evidence in support of such an allegation. Fitzgerald presented testimony from two investigators from the Lincoln-Lancaster County narcotics task force, one of which authored the affidavit.

Following the hearing, the trial court overruled the motion to suppress, finding:

> [Fitzgerald] has not made a sufficient preliminary showing that there were any false statements made knowingly and intentionally, or with reckless disregard for the truth, by the affiant in his affidavit for the search warrant. Accordingly, this court finds that no further hearing is required to further challenge the truthfulness of any factual statements made in the affidavit.

The trial court further found that there was sufficient probable cause contained within the affidavit for the issuance of a search warrant.

The case proceeded to a jury trial. Fitzgerald renewed his motion to suppress evidence obtained as a result of the search warrant, which was overruled. The jury found Fitzgerald guilty of possession of a controlled substance, and the trial court accepted the jury's verdict. Following an enhancement hearing, the trial court found Fitzgerald to be a habitual criminal and sentenced him to 10 to 20 years' imprisonment.

## ASSIGNMENTS OF ERROR

Fitzgerald assigns that the trial court erred in (1) failing to find that the search warrant affidavit contained material misrepresentations and/or omissions, (2) finding that the search warrant affidavit contained sufficient information upon which to issue a warrant, and (3) failing to make factual findings when overruling his motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

ANALYSIS

Fitzgerald's first two assignments of error raise issue with the content of the affidavit in support of the search warrant. Before we address Fitzgerald's specific assigned errors, we set forth some general propositions of law in regard to search warrants.

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012). Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id*. The magistrate who is evaluating a probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002).

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. *State v. Wiedeman, supra*. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *Id.*

In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of information and circumstances contained within the four corners of the affidavit, and evidence that emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *State v. Sprunger, supra.*

*Material Misrepresentations and/or Omissions.*

We now address Fitzgerald's assignments of error, the first being that the trial court erred in failing to find that the search warrant affidavit contained material misrepresentations and/or omissions. The affidavit in support of the search warrant for 1609 D Street, apartment No. 10, was signed by Investigator Timothy Cronin. When the affidavit was signed in March 2012, Cronin had been a Lincoln police officer for approximately 12 years and was assigned to the Lincoln-Lancaster County narcotics task force. In the first paragraph of his affidavit, Cronin set forth his training in narcotics investigations with various agencies. The remainder of his affidavit describes the investigation that led up to the search of 1609 D Street, apartment No. 10. Although the affidavit is lengthy, we include most of the language contained within it in order to provide context to our analysis of Fitzgerald's arguments regarding the sufficiency of the affidavit:

> On 2-23-12 [an] Investigator Sorensen and your affiant were in the area of 11th/E and observed a vehicle driving in the area. Investigators followed this vehicle and observed it to stop at numerous locations that are all currently being investigated for the sale of narcotics. After this vehicle left these locations [the occupants of the vehicle] were observed to pick up [an] unknown [male individual] and then travel directly to the alley parking lot of 1609 D. Street. At that time the . . . driver [of the vehicle] and unknown [male] entered the rear of 1609 D. Street and left a few minutes later with the [unknown] male walking away and the [driver] returning to his car. Investigators continued to follow

- 3 -

the car to 911 S. 11th Street w[h]ere [a passenger] exited the vehicle and was immediately contacted by [an] Investigator Mayo. Investigator Mayo located .1 grams of crack cocaine on the ground where [the passenger] was contacted. During this same time Investigator Sorensen and your affiant continued to follow the vehicle and contacted it at 1100 W.C Street. As the vehicle parked [the driver] was contacted by your affiant. [The driver] was observed to cup his hand under his seat while Investigator Sorensen approached from the passenger side. [The driver] failed to respond to Investigators commands then drove his vehicle into our vehicle. He was then pulled out of his vehicle. Investigator Sorensen located .3 grams of crack cocaine directly where [the driver] had his hand placed in the vehicle.

On 2-28-12 a concerned citizen contacted your affiant and stated that suspicious activity has been occurring at 1609 D. Street . . . . They stated specifically that numerous individuals would arrive at the rear of 1609 D. Street and shout to a third story window for "Joe". An older [African-American male] would then come down from the [southeast] corner third floor and allow the individuals into the complex. A short time later these individuals would leave. The concerned citizen stated this has occurred several times over the past few months. The majority of these contacts were in the evening hours.

On 3-6-12 Investigator Mayo and your affiant conducted surveillance at 1328 E. Street and observed 2 [unknown male individuals] leave and drive to the rear parking lot of 1609 D. Street. Both males entered the building and both left a few minutes later. They returned to 1328 E. Street where they were contacted by Investigator Mayo and your affiant as they parked their vehicle. Investigator Mayo contacted the passenger of the vehicle . . . who was observed to shove his right hand between the seat and the door. Once [the passenger] opened the door Investigator Mayo observed in plain view a white rock (.2 grams) substance that pretested positive for cocaine. [The passenger] stated that he was taken to "Joe[']s" apartment near [16th and D Streets].

On 3-7-12 Investigator Mayo and [an] Investigator Schmidt conducted surveillance at 1609 D. Street. At approx. 2008hrs both Investigators observed a Saturn vehicle . . . registered to [C.A.] arrive. [C.A.] exited her car and yelled to the SE/third story apartment. [An African-American male] who Investigator Mayo [identified] as . . . Fitzgerald exited apt #10 and let [C.A.] in and she left two minutes later. Information from court records showed [C.A.] was indicted on cocaine charges in 2005. Investigator Mayo then observed [an unknown male individual] arrive on a bike, yell up for "Joe", and thr[o]w rocks at the SE/third story apartment window. . . . Fitzgerald exited his apartment #10 and came downstairs to the door. Fitzgerald let the [man] into the threshold of the building and Investigator Mayo observed a hand to hand deal between the two parties. The unknown [male] then left on his bike. A short time later 2 [other unknown males] walked up to the rear of 1609 D. Street and whistled up towards . . . Fitzgerald's apartment. Fitzgerald exited his apartment and let both parties into the complex and into his apartment. At 2056hrs a second [male individual] on a bike arrived and threw rocks at . . . Fitzgerald's apartment. An unknown [African-American male] exited apartment #10 and let [the person on the bike] into the apartment. This party stayed for approx. 3 minutes and left.

On 3-20-12 Investigator Mayo conducted surveillance at 1609 D. Street and from 2000hrs to 2110hrs Investigator Mayo observed 10 individuals arrive either on foot or in a vehicle. Investigator Mayo observed . . . Fitzgerald come down to the rear entry door to 1609 D. Street and let all these individuals in. These individuals stayed for a couple of minutes each and then left the apartment. Investigator Mayo [identified one of the individuals as a person who] has contacts with narcotics and [who] was cited for deliver[y] of [a] controlled substance in 2006.

At the end of the affidavit, Investigator Cronin stated his belief that the investigation of 1609 D Street, apartment No. 10, had generated facts which constituted probable cause to search the apartment as well as all of the individuals located within the apartment.

As previously stated, Fitzgerald alleges that Cronin misrepresented material facts and omitted other material information in the affidavit, making the search warrant invalid. In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the U.S. Supreme Court indicated that in order to invalidate a warrant on the basis of material misrepresentations, a defendant must show both that the affiant made a deliberate falsehood or acted with reckless disregard for the truth and that the challenged representation is "material," that is, necessary to a finding of probable cause. See *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002). The Nebraska Supreme Court has held that omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit. *Id*.

Fitzgerald first alleges that Cronin omitted material information from the affidavit when he failed to include information about where the vehicle that the police were following on February 23, 2012, had been prior to stopping at 1609 D Street. Specifically, he argues that the affidavit failed to mention that the driver of the vehicle was first seen entering a building or the courtyard at 1328 E Street and that this building was under surveillance for drug activity.

Contrary to Fitzgerald's assertion, the affidavit does include information about where the vehicle that the police were following traveled to prior to stopping at 1609 D Street. The affidavit states: "Investigators followed this vehicle and observed it to stop at numerous locations that are all currently being investigated for the sale of narcotics. After this vehicle left these locations [the occupants of the vehicle] were observed to pick up [an] unknown [male individual] and then travel directly to the alley parking lot of 1609 D. Street." The fact that the affidavit did not state the specific addresses where the vehicle stopped before stopping at 1609 D Street was not a material omission, as it was not misleading. See *State v. Shock, supra.* There is nothing to suggest that Cronin included any misrepresentations or omitted any material information in the affidavit about the investigation conducted on February 23, 2012.

Fitzgerald next argues that Cronin misrepresented material facts in regard to the surveillance on February 23 and March 6, 2012, in that the affidavit states that individuals were observed entering the building at 1609 D Street, but fails to state that the officers did not see which apartment the individuals entered once inside the building. He argues that this omission creates the impression that the individuals who were found to be in possession of drugs on those 2 days obtained the drugs from apartment No. 10, Fitzgerald's residence.

At the suppression hearing, Cronin testified that on February 23 and March 6, 2012, he saw the individuals enter the building, but he did not see where they went once inside the building. The affidavit simply states that on February 23, the individuals "entered the rear of 1609 D. Street" and that on March 6, the individuals "entered the building." Cronin did not misrepresent the facts by failing to specifically state that he did not see where the individuals went inside the building, and the failure to include such a statement did not create an assumption that the drugs came from apartment No. 10. Cronin simply stated what he saw on those 2 days and cannot be expected to state everything he did not see.

Finally, Fitzgerald argues that Cronin misrepresented a material fact in regard to the investigation on March 7, 2012, in that he omitted the fact that none of the individuals observed coming and going from Fitzgerald's apartment on that day were contacted by law enforcement and that consequently, none of them were found to be in possession of drugs. There was no material misrepresentation or omission because there was not additional information to include in the affidavit about the surveillance conducted on March 7. The evidence presented at the suppression hearing revealed that the investigators did not stop or question any of the individuals who had been at Fitzgerald's apartment. One of the investigators testified that officers attempted to stop a few of the individuals for questioning, but they "got away." Based on the evidence presented at the suppression hearing, it is clear that Cronin did not leave out any material information from the affidavit. Again, an affiant cannot be expected to report everything that did not happen during an investigation.

In summary, there were no material misrepresentations or omissions in Cronin's affidavit that would invalidate the warrant. Fitzgerald's assignment of error in this regard is without merit.

*Sufficiency of Information in Affidavit.*

Fitzgerald next assigns that the trial court erred in finding that the affidavit in support of the search warrant contained sufficient information upon which to issue a warrant. We conclude that the search warrant affidavit was sufficient to establish probable cause.

The affidavit was signed by Cronin, an experienced police officer, who was working as part of the Lincoln-Lancaster County narcotics task force and had received training in narcotics investigations from various agencies.

The affidavit shows that while conducting surveillance between February 23 and March 20, 2012, investigators observed over 15 individuals coming and going from Fitzgerald's apartment. Most of the individuals were seen being let in the building by Fitzgerald. Each of the individuals stayed for only a few minutes at a time, and one entered into only the threshold of the building. Many of the individuals were observed shouting, whistling, or throwing rocks at Fitzgerald's third-story apartment window to get his attention, upon which Fitzgerald was observed exiting his apartment and going downstairs to let the individuals into the building. Several of these individuals had prior contacts with law enforcement for drug offenses or were seen frequenting other locations being investigated for the sale of narcotics. Three individuals were contacted by law enforcement immediately after leaving Fitzgerald's apartment and each were found in possession of cocaine. One of the individuals found in possession of cocaine told police that he had been at "Joe's apartment near 16th/D."

The affidavit also states that Fitzgerald had previous contacts with Lincoln police officers, including selling crack cocaine to an undercover officer multiple times in 2007. Fitzgerald's most recent address in the Lincoln Police Department's record management system was 1609 D Street, apartment No. 10. Investigators confirmed that utilities for the apartment were in Fitzgerald's name.

Based on the totality of the circumstances, the information in the affidavit was sufficient to establish probable cause that contraband or evidence of a crime would be found in the apartment. This assignment of error is without merit.

*Trial Court's Failure to Make Factual Findings.*

In his final assignment of error, Fitzgerald argues that the trial court erred by failing to make factual findings in its order denying his motion to suppress. In *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996), the Nebraska Supreme Court held that district courts shall articulate in writing or from the bench their general findings when denying or granting a motion to suppress, with the degree of specificity required varying from case to case. The *Osborn* court recognized that findings of fact may be indispensable to a proper appellate review.

However, in *State v. Seberger*, 279 Neb. 576, 582, 779 N.W.2d 362, 366-67 (2010), the court held that "*Osborn* does not require reversal or remand of every case in which a trial court's findings could have been more complete." The concern in *Osborn* was that without articulated findings, "'[appellate courts] might not know whether the trial court rejected a defendant's factual contentions or had acted on some legal basis.'" *State v. Seberger*, 279 Neb. at 583, 779 N.W.2d at 367, quoting *State v. Osborn, supra.*

The concern in *Osborn, supra*, is not a concern in the present case because there are no factual disputes at issue. The issues on appeal, whether the search warrant was invalid due to material misrepresentations or omissions in the affidavit and whether the affidavit was sufficient to establish probable cause, are questions of law that we review independently of the trial court's determination. The trial court's failure to articulate factual findings does not affect the determination of the issues before us. Under the circumstances, the trial court's ruling was sufficient, and this assignment of error is without merit.

## CONCLUSION

We conclude that the affidavit in support of the search warrant did not contain material misrepresentations or omissions and was sufficient to establish probable cause necessary to issue a warrant. Thus, the trial court properly overruled Fitzgerald's motion to suppress all the evidence obtained as a result of the execution of the search warrant on March 20, 2012. We affirm Fitzgerald's conviction for possession of a controlled substance.

AFFIRMED.