STATE OF NEBRASKA, APPELLEE, V.
BYRON MARCH, APPELLANT.
658 N.W.2d 20

Filed March 14, 2003.   No. S-01-755.

James R. Mowbray and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Byron March was convicted in the district court for Scotts Bluff County of two counts of first degree assault and one count of burglary. March was sentenced to 8 to 16 years' imprisonment on one first degree assault conviction, 2 to 4 years' imprisonment on the second first degree assault conviction to be served consecutively, and 1 to 2 years' imprisonment on the burglary conviction to be served concurrently with the other sentences. During the early stages of the proceedings, the trial court granted March's motion to suppress evidence located during execution of a search warrant, but such ruling was reversed by a single judge of the Nebraska Court of Appeals pursuant to the authority contained in Neb. Rev. Stat. § 29-824 (Cum. Supp. 2002). Following trial, March appealed his convictions and the denial of his motion to suppress to the Court of Appeals. The Court of Appeals affirmed, and we granted March's petition for further review. We affirm.

## STATEMENT OF FACTS

In the early hours of November 30, 1999, Officer Ken Webber and another officer were called to a Scottsbluff motel to deal

with a noise disturbance. They discovered a loud party going on in room 243. Upon entering the room, the officers noticed March arguing with another man. They told the occupants of the room that the party was over and directed the occupants to cease making noise. The officers then left the motel.

Within 2 hours, the officers and two additional officers were called back to the motel to investigate a report of a "dead woman" in room 132. They observed that the door to room 132 was damaged and appeared to have been forced open. Inside the room, they found a male victim on the floor with blood around his head. Upon examining the man's head, they noted an impression of a shoe sole with a "Nike Air" trademark. The officers also found a female victim who was not dead but had a large amount of blood around her head, was nude from the waist down, and appeared to have been sexually assaulted.

The officers spoke with three individuals who said they had been partying in room 132 with the two victims. One of the three individuals was a man who had earlier been seen arguing with March at the party in room 243. The three said they left the motel to get cigarettes and returned approximately 20 minutes later to find the two victims bleeding on the floor. The officers observed no bloodstains on the three witnesses' clothing.

The officers decided to search for a shoe with a sole pattern similar to the impression on the male victim's head and focused their search on people who were at the party in room 243. While questioning occupants of room 243 and others who had been at the party, Webber inquired as to the whereabouts of the "big white guy," later identified as March, who had been arguing at the party. He was told March was staying in room 258.

Webber and two other officers went to room 258 to question March. When they arrived, they noticed the door was partially open. When Webber knocked on the door, the door opened 6 to 8 inches, and another officer observed someone, later identified as March, lying on the bed. Webber shouted " 'police department' " into the room a couple times and received no response. Fearing another possible victim, the officers entered the room. As the facts evolved, March proved not to be a victim.

Sometime after entering the room, Webber noticed that the shower area was wet and saw a blood smear on the shower

curtain. In ruling on the motion to suppress, the trial court found that these observations were made after March's well-being had been ascertained, whereas the single judge of the Court of Appeals determined that such observations occurred before March's condition was assessed. Webber testified that he approached March and noticed his hair was wet and he had a cut on his hand.

After attempting to rouse March, Webber observed an unzipped duffelbag containing a pair of white underwear which appeared to be bloodstained. Another officer saw a shoe that appeared to be bloodstained. The officer picked up the shoe and showed the sole pattern to a third officer who said the pattern looked similar to the impression on the male victim's head. The second officer took the shoe to room 132 to show it to the fourth officer who agreed that the sole pattern was similar to the impression on the male victim's head. The second officer returned to March's room and placed March under arrest. An affidavit for a search warrant was prepared, essentially containing the facts recited above. On the basis of the affidavit, a search warrant was subsequently issued for a search of March's room and numerous items of evidence were found which linked March to the crimes committed in room 132.

March was charged with first degree sexual assault, two counts of first degree assault, and burglary. Prior to trial, March moved to suppress evidence obtained from his motel room pursuant to the search warrant. The trial court granted the motion. The State filed an interlocutory appeal to a single judge of the Court of Appeals pursuant to the provisions of § 29-824, and the single judge reversed. *State v. March*, No. A-00-445, 2000 WL 1252056 (Neb. App. Sept. 5, 2000) (not designated for permanent publication).

The single judge and the trial court both determined that the officers had lawfully entered March's room under the emergency exception to the warrant requirement. They also both agreed that once the officers discovered that no emergency existed, they had a duty to retreat, and that therefore, the subsequent search of March's duffelbag and the seizure of his shoes were illegal and must be excised from the affidavit in support of the search warrant. In our analysis below regarding

the sufficiency of the affidavit, we treat the evidence of the contents of the duffelbag and the shoes as having been excised.

The trial court and the single judge diverged in their determinations regarding when Webber observed the wet shower area and the blood smear on the shower curtain. The trial court had found that the observations had been made sometime after the initial entry and assessment of March's condition and that thus, the product of those observations was not properly obtained. In contrast, the single judge determined that the evidence from the hearing on the motion to suppress "conclusively establishe[d]" that the observations of the bathroom area were made as Webber entered the room and was headed toward March. *State v. March*, No. A-00-445, 2000 WL 1252056 at *9. Because the trial court excised these observations from the affidavit, it found no probable cause for the issuance of the search warrant and had therefore ruled to suppress the evidence obtained from the execution of the search warrant. The single judge, however, determined that Webber's observations of the wet shower and the blood smear on the shower curtain as well as the cut on March's hand could be used in assessing the sufficiency of the affidavit in support of the search warrant and that with the inclusion of these facts, probable cause for issuance of the search warrant existed. According to the single judge, the evidence located as a result of execution of the search warrant was properly obtained. The single judge therefore reversed the trial court's order which had granted the motion to suppress.

At this point, March filed a motion for a rehearing in the Court of Appeals. The Court of Appeals concluded that a motion for a rehearing is permitted only where the underlying opinion is by "the court," that a single-judge opinion is not an opinion of "the court," and that therefore, the motion for rehearing was not authorized. The motion for rehearing was stricken. *State v. March*, 9 Neb. App. 907, 622 N.W.2d 694 (2001). See, also, *State v. Chambers*, 242 Neb. 124, 493 N.W.2d 328 (1992).

During the subsequent bench trial, March attempted to raise the issues first raised in his motion to suppress. In this connection, March offered exhibit 64, consisting of two pages from a multipage police report prepared by Webber on November 30, 1999. While making the offer, counsel for March stated that

exhibit 64 was not offered as evidence for trial but solely in connection with the issues encompassed by the motion to suppress and represented that "[t]his report wasn't available to the defense at the — on the date of the Motion to Suppress hearing, it was later provided." Contrary to Webber's testimony at the suppression hearing and at trial, the report indicated that Webber had not observed the wet shower and the blood smear on the shower curtain until some time after he had approached March and tried to rouse March. The timing of these observations is not explicit in the affidavit in support of a search warrant. The trial court refused to admit the report into evidence, stating, "I'm going to overrule the Motion to Suppress and I'm going to show that the Exhibit 64 was not received because, as I understand it, [March is] offering it just in support of the Motion to Suppress."

The trial court subsequently convicted March of two counts of first degree assault and one count of burglary but dismissed the count of first degree sexual assault due to insufficient proof. March was sentenced to 8 to 16 years' imprisonment on one assault conviction, 2 to 4 years' imprisonment on the second assault conviction to be served consecutively to the first, and 1 to 2 years' imprisonment on the burglary conviction to be served concurrently with the other sentences.

March appealed to the Court of Appeals and argued (1) that both the trial court and the single judge of the Court of Appeals erred in determining that the emergency doctrine justified the officers' warrantless entry into March's room, (2) that the single judge of the Court of Appeals erred in ruling that the trial court's factual findings regarding the timing of Webber's observations of the wet shower and the blood smear were clearly erroneous, and (3) that the trial court erred in refusing to admit exhibit 64 into evidence at trial in connection with March's earlier motion to suppress.

In an unpublished opinion, *State v. March*, No. A-01-755, 2002 WL 31300046 (Neb. App. Oct. 15, 2002) (not designated for permanent publication), the Court of Appeals concluded (1) that neither the trial court nor the single judge erred in finding that the warrantless entry was justified by the emergency exception, (2) that the single judge did not err in determining that the

trial court's finding regarding the timing of Webber's observations of the bathroom was clearly erroneous, and (3) that because March failed to file a second motion to suppress following the single judge's ruling at least 10 days before trial as required under Neb. Rev. Stat. § 29-822 (Reissue 1995), March was not entitled to present new evidence at trial in support of the motion to suppress. March petitioned this court for further review, and we granted his petition.

## ASSIGNMENTS OF ERROR

In petitioning for further review, March assigns two errors to the Court of Appeals, which we restate as follows: (1) that the Court of Appeals erred in affirming the denial of the motion to suppress based on the reasoning of the single judge of the Court of Appeals and (2) that the Court of Appeals erred in affirming the trial court's refusal to admit exhibit 64 and further erred by holding that March was required but failed to file a new motion to suppress at least 10 days before trial in order to present new evidence in support of the suppression issue.

## STANDARD OF REVIEW

■ When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *State v. Birge,* 263 Neb. 77, 638 N.W.2d 529 (2002).

## ANALYSIS

*Necessity to Renew Motion to Suppress Under § 29-822:*
*Exclusion of Exhibit 64.*

We first address March's second assignment of error in which he claims that the Court of Appeals erred in holding that under § 29-822, he was required to file a second motion to suppress at least 10 days before trial in order to present the additional evidence of exhibit 64 in support of the suppression issues raised in his original motion to suppress. We agree with the Court of Appeals that under § 29-822, March waived reconsideration of the suppression issue at trial when he failed to file a new motion to suppress at least 10 days before trial and further failed to demonstrate good cause or surprise to excuse such failure. Thus, the trial court's refusal to admit exhibit 64, as affirmed by the

Court of Appeals, was not error, and we reject this assignment of error on further review.

After the trial court originally granted March's motion to suppress in this case, the State appealed the trial court's decision to a single judge of the Court of Appeals pursuant to § 29-824. The single judge reversed the trial court's order of suppression. Section 29-824(2) provides that upon trial following the order of a single judge "the parties and the trial court shall be bound by such order."

With regard to a felony charge, § 29-822 provides that a motion to suppress evidence obtained by an allegedly unlawful search and seizure "must be filed at least ten days before trial or at the time of arraignment, whichever is the later, unless otherwise permitted by the court for good cause shown." The statute further provides that

> the court may entertain such motions to suppress after the commencement of trial where the defendant is surprised by the possession of such evidence by the state, and also may in its discretion then entertain the motion where the defendant was not aware of the grounds for the motion before commencement of the trial.

This court has previously held that "[i]t is clearly the intention of section 29-822 . . . that motions to suppress evidence are to be ruled on and finally determined before trial, even to permit an appeal before trial from an order suppressing evidence unless within the exceptions contained in the statute." *State v. Smith*, 184 Neb. 363, 369, 167 N.W.2d 568, 572 (1969). In *Smith*, this court noted that the finality indicated by § 29-822 was not "paramount to the long-recognized right of trial courts to correct their errors during term time" and therefore stated that § 29-822 "intends, unless within the exceptions contained in the statute, that motions to suppress evidence should be finally determined before trial, but that a trial court is not precluded from correcting errors at the trial." 184 Neb. at 369-70, 167 N.W.2d at 572.

■ The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *State v. Rhea*, 262 Neb. 886, 636 N.W.2d 364

(2001). Sections 29-822 and 29-824 are part of a series of statutes pertaining to motions to suppress. Section 29-822 provides, with certain exceptions, that motions to suppress be finally determined before trial, and § 29-824 provides that single-judge rulings on motions to suppress are binding on the trial court and parties in a subsequent trial. Construing these statutes together, we conclude that after a ruling granting a motion to suppress has been appealed, the single-judge opinion on the ruling is binding on the trial court and the parties as a determination of the suppression issue in a subsequent trial. However, if the defendant wishes to reopen the motion to suppress, the defendant must (1) put the State and trial court on notice of such intention by filing a new motion to suppress at least 10 days before trial or (2) make a showing that the existence of one of the exceptions provided in § 29-822 excuses the 10-day requirement.

In the present case, following the single judge's order, contrary to § 29-822, March failed to file a new motion to suppress at least 10 days before trial. At trial, March made no showing of good cause to excuse his failure to file a new motion prior to trial, nor did he demonstrate surprise. March merely requested that exhibit 64 be admitted for consideration in connection with his original motion to suppress.

We note that exhibit 64 identified at trial consists of pages 9 and 10 of the investigative report prepared by Webber on November 30, 1999. We further note that at the suppression hearing conducted nearly 1½ years prior to trial, March used exhibit 5, consisting in part of pages six, seven, and eight of the same investigative report, to refresh Webber's memory. Given March's awareness of pages six, seven, and eight of the report at the time of the suppression hearing, we cannot say that March was "surprised by the [State's] possession of" pages 9 and 10 of the same report or that March "was not aware of the grounds for the motion before commencement of the trial," and we therefore cannot say that March showed good cause under § 29-822 to excuse his failure to file a new motion to suppress at least 10 days before trial. We therefore conclude that the Court of Appeals did not err in determining that the trial court did not err in refusing to admit exhibit 64 into evidence at trial, because March failed to timely file a new motion to suppress.

*Denial of Motion to Suppress.*

Although, as concluded above, March waived reconsideration of the suppression issue at trial, the single-judge opinion denying his motion to suppress was open to review before the Court of Appeals in connection with the appeal of March's convictions. Section 29-824(2) provides that "[u]pon conviction after trial the defendant may on appeal challenge the correctness of the order by the judge." In the context of § 29-824, we read "the order by the judge" to refer to the ruling of the single judge. It was therefore appropriate on appeal to the Court of Appeals for March to challenge the single judge's reasoning directing the denial of his motion to suppress. On further review, March claims that the Court of Appeals erred in affirming the denial of his motion to suppress. Albeit for reasons different from those expressed by the Court of Appeals, we conclude that the denial of the motion to suppress, as affirmed by the Court of Appeals, was correct, and we reject this assignment of error.

In the instant case, the protections of the Fourth Amendment to the U.S. Constitution to be free from unreasonable search and seizure extended to March's motel room. See *Stoner v. California,* 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964). Under the facts of this case, the initial entrance of the police into March's room without a warrant was proper due to exigent circumstances. See *State v. Illig,* 237 Neb. 598, 467 N.W.2d 375 (1991). In ascertaining March's condition, the officers legitimately observed that March had a cut on the knuckle of his right hand. This fact was properly included in the affidavit in support of the search warrant. Upon discovering that March was not injured, the justification for the officers' presence in March's room ceased to exist.

On appeal to the Court of Appeals and on further review to this court, March takes issue with the single judge's finding that Webber saw the wet shower area and the blood smear on the shower curtain before he ascertained March's condition and that such observations were properly included in the affidavit. With such observations included, the single judge determined that the affidavit supported the issuance of the search warrant. March disagrees with the determination of the Court of Appeals and argues that the trial court correctly found that the observations regarding the bathroom occurred after Webber had ascertained

March's condition and that therefore such observations should have been excised from the affidavit.

The affidavit in support of the search warrant gives a lengthy account of the events at the motel on November 29 and 30, 1999. Included are details regarding the disturbances, the threatened altercation, the individuals involved, and the discovery of the victims and their conditions. Properly included in the affidavit is the specific information regarding the fresh cut to March's knuckle. We evaluate the sufficiency of the affidavit to determine if it supports issuance of the search warrant of March's room.

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002). Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id.*

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999). In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *State v. Myers*, 258 Neb. 272, 603 N.W.2d 390 (1999).

Although it may be necessary to excise certain matter from an affidavit, if the remainder of the affidavit is sufficient to establish probable cause, the warrant issued upon such remaining information in the affidavit will be proper and the results of the search pursuant to the warrant are constitutionally obtained. *State v. Faber, supra.* A search conducted pursuant to a search warrant supported by probable cause is generally considered to be reasonable, and it is a defendant's burden to prove that the search or seizure was unreasonable. *State v. Ortiz, supra.*

We have reviewed the affidavit in support of the search warrant, and we conclude that even if we excise the statements

regarding the bathroom and shower curtain, as March suggests, the remaining information contained in the affidavit was sufficient to support issuance of the search warrant for March's motel room. As reflected in the affidavit, before the police entered March's room, they had gathered evidence that March had been involved in an argument with a man who was staying in the same room as the victims. They also had gathered evidence which indicated that the perpetrator of the assaults was likely one of the people who had been at the party earlier in the night. The police had also gathered evidence which indicated that other people who were at the party had not committed the assaults. During the time the officers' presence in March's room was covered by the emergency doctrine, Webber observed that March had a cut on his knuckle.

■ The magistrate who is evaluating the probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001). Excluding the observations of the bathroom, the recitations properly included in the affidavit indicated a fair probability that evidence of a crime would be found in March's motel room, and the affidavit was sufficient to support the issuance of the search warrant. We therefore conclude that the Court of Appeals did not err in affirming the denial of the motion to suppress.

## CONCLUSION

We conclude that March waived reconsideration of the suppression issue at trial when, contrary to § 29-822, he failed to file a new motion to suppress at least 10 days before trial and failed to demonstrate either good cause or surprise to excuse his failure. We further conclude that, even excising the information regarding the officers' observations of March's motel bathroom, the affidavit in support of the search warrant in this case was sufficient to justify issuance of the warrant and that the denial of March's motion to suppress evidence obtained thereby was proper. We

therefore affirm the Court of Appeals' decision which affirmed the denial of March's motion to suppress and March's convictions.

AFFIRMED.