IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. PITTMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
JARIEL A. PITTMAN, APPELLANT.

Filed November 19, 2013.    No. A-13-072.

Appeal from the District Court for Lancaster County: JODI NELSON, Judge. Affirmed.

Thomas R. Lamb, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Jariel A. Pittman was convicted by the district court for Lancaster County of being in possession of a controlled substance and being a habitual criminal. As a result of his convictions, Pittman was sentenced to 10 to 20 years' imprisonment. Pittman appeals from his convictions and his sentence. On appeal, Pittman alleges that the district court erred in overruling his motion to suppress evidence obtained as a result of the execution of a search warrant; in finding sufficient evidence to support his convictions for possession of a controlled substance and for being a habitual criminal; and in imposing an excessive sentence.

Upon our review, we find no merit to Pittman's assertions on appeal. Accordingly, we affirm his convictions and sentence.

## II. BACKGROUND

The State filed a criminal complaint charging Pittman with being in possession of a controlled substance pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2012) and with being

a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008). The possession charge stems from an incident which occurred in March 2012.

Evidence adduced at trial revealed that on the night of March 20, 2012, members of the Lincoln-Lancaster County narcotics task force executed a search warrant at an apartment building located at 1609 D Street in Lincoln, Nebraska. The task force entered apartment No. 10 and immediately observed Pittman and another individual rush toward the bathroom. Officers followed Pittman into the bathroom, where they observed him to be trying to dispose of items by flushing them down the toilet. Officers handcuffed Pittman and searched him. During the search of Pittman, a clear plastic baggie containing a white, rock-like substance was located in his right front pants pocket. This substance was later determined to be 5.21 grams of cocaine. In Pittman's left front pants pocket, a small baggie of marijuana was found. In addition, after removing Pittman from the bathroom, officers observed in the toilet a clear plastic baggie that they believed had contained narcotics and a metal pipe, which appeared to have been used to ingest narcotics.

After officers searched Pittman, he was taken to the police station for further questioning. During this questioning, Pittman did not deny that he had been in possession of cocaine. Rather, he explained that the cocaine was not his, but that approximately an hour prior to the search of the apartment, someone had given him the cocaine to hold. He did not provide any reason to explain why the person had asked him to hold the cocaine or why he chose to do so.

Prior to trial, Pittman filed a motion to suppress all of the evidence obtained as a result of the search warrant executed at 1609 D Street, apartment No. 10, including evidence of the cocaine found in his pants pocket. Pittman argued that the affidavit to support issuance of the search warrant was not sufficient and that, as a result, the search warrant was not valid. A hearing was held on the allegations in Pittman's motion to suppress. After the hearing, the district court overruled Pittman's motion, finding that "there was sufficient probable cause contained within the affidavit for the issuance of a search warrant."

At trial, Pittman did not testify or offer any other evidence in his defense. In fact, Pittman did not cross-examine the State's witnesses. Instead, Pittman repeatedly renewed his motion to suppress all of the State's evidence as a result of his belief that such evidence was seized pursuant to an invalid search warrant and should be suppressed. The district court overruled Pittman's objections and, ultimately, found Pittman guilty of being in possession of a controlled substance.

After the trial, the district court held a hearing to determine whether Pittman was a habitual criminal. At this hearing, the State offered three exhibits to prove that Pittman had been previously convicted of two felony offenses and that he had served a term of more than 1 year in prison for each of the convictions. The district court found Pittman to be a habitual criminal and sentenced him to 10 to 20 years' imprisonment.

Pittman appeals from his convictions and sentence here.

### III. ASSIGNMENTS OF ERROR

On appeal, Pittman assigns four errors, which we have consolidated to three assigned errors for our review. First, Pittman alleges that the district court erred in overruling his motion to suppress evidence that was obtained as a result of the search warrant executed at 1609 D

Street, apartment No. 10, on March 20, 2012. Next, Pittman alleges that there was insufficient evidence to support his convictions for being in possession of a controlled substance and being a habitual criminal. Finally, Pittman alleges that the district court erred in imposing an excessive sentence.

## IV. ANALYSIS

### 1. SEARCH WARRANT

Pittman alleges that the district court erred in overruling his motion to suppress all of the evidence obtained as a result of the search warrant executed at 1609 D Street, apartment No. 10, on March 20, 2012. Specifically, Pittman argues that the search warrant was invalid because the affidavit in support of the search warrant contained "material misrepresentations" and omissions and the affiant officer acted with reckless disregard for the truth. See brief for appellant at 14. Based upon our review of the record, we conclude that the district court did not err in overruling Pittman's motion to suppress and that Pittman's arguments to the contrary are without merit.

### (a) Background

The possession of a controlled substance charge against Pittman was based on evidence seized, pursuant to a search warrant, during a March 20, 2012, search of 1609 D Street, apartment No. 10. During the execution of the search warrant, police officers searched Pittman and found 5.21 grams of cocaine in his pants pocket.

The affidavit in support of the search warrant to search 1609 D Street, apartment No. 10, was signed by Lincoln Police Investigator Timothy Cronin. Investigator Cronin has been a Lincoln police officer for approximately 12 years, and in March 2012, he was assigned to the Lincoln-Lancaster County narcotics task force. In the first paragraph of his affidavit, Investigator Cronin detailed his extensive training and background with narcotics investigations. The remainder of his lengthy affidavit describes the investigation that led up to the search of 1609 D Street, apartment No. 10.

Although we understand that the affidavit is extensive, we reprint much of the language contained within it in order to provide context to our analysis of Pittman's assertions regarding the sufficiency of that affidavit:

> On 2-23-12 Investigator Sorensen and your affiant were in the area of 11th/E and observed a vehicle driving in the area. Investigators followed this vehicle and observed it to stop at numerous locations that are all currently being investigated for the sale of narcotics. After this vehicle left these locations [the occupants of the vehicle] were observed to pick up a[n] unknown [male individual] and then travel directly to the alley parking lot of 1609 D. Street. At that time the . . . driver [of the vehicle] and unknown [male] entered the rear of 1609 D. Street and left a few minutes later with the [unknown] male walking away and the [driver] returning to his car. Investigators continued to follow the car to 911 S. 11th Street w[h]ere [a passenger] exited the vehicle and was immediately contacted by Investigator Mayo. Investigator Mayo located .1 grams of crack cocaine on the ground where [the passenger] was contacted. During this same time Investigator Sorensen and your affiant continued to follow the vehicle and contacted it at 1100 W.C Street. As the vehicle parked [the driver] was contacted by your affiant. [The

driver] was observed to cup his hand under his seat while Investigator Sorensen approached from the passenger side. [The driver] failed to respond to Investigators commands then drove his vehicle into our vehicle. He was then pulled out of his vehicle. Investigator Sorensen located .3 grams of crack cocaine directly where [the driver] had his hand placed in the vehicle.

On 2-28-12 a concerned citizen contacted your affiant and stated that suspicious activity has been occurring at 1609 D. Street . . . . They stated specifically that numerous individuals would arrive at the rear of 1609 D. Street and shout to a third story window for "Joe". An older [African American male] would then come down from the [southeast] corner third floor and allow the individuals into the complex. A short time later these individuals would leave. The concerned citizen stated this has occurred several times over the past few months. The majority of these contacts were in the evening hours.

On 3-6-12 Investigator Mayo and your affiant conducted surveillance at 1328 E. Street and observed 2 [unknown male individuals] leave and drive to the rear parking lot of 1609 D. Street. Both males entered the building and both left a few minutes later. They returned to 1328 E. Street where they were contacted by Investigator Mayo and your affiant as they parked their vehicle. Investigator Mayo contacted the passenger of the vehicle . . . who was observed to shove his right hand between the seat and the door. Once [the passenger] opened the door Investigator Mayo observed in plain view a white rock (.2 grams) substance that pretested positive for cocaine. [The passenger] stated that he was taken to "Joe[']s" apartment near [16th and D Street].

On 3-7-12 Investigator Mayo and Investigator Schmidt conducted surveillance at 1609 D. Street. At approx. 2008hrs both Investigators observed a Saturn vehicle . . . registered to [C.A.] arrive. [C.A.] exited her car and yelled to the SE/third story apartment. [An African American male] who Investigator Mayo [identified] as Joe Fitzgerald exited apt #10 and let [C.A.] in and she left two minutes later. Information from court records showed [C.A.] was indicted on cocaine charges in 2005. Investigator Mayo then observed [an unknown male individual] arrive on a bike, yell up for "Joe", and thr[o]w rocks at the SE/third story apartment window. Joe Fitzgerald exited his apartment #10 and came downstairs to the door. Fitzgerald let the [man] into the threshold of the building and Investigator Mayo observed a hand to hand deal between the two parties. The unknown [male] then left on his bike. A short time later 2 [other unknown males] walked up to the rear of 1609 D. Street and whistled up towards Joe Fitzgerald's apartment. Fitzgerald exited his apartment and let both parties into the complex and into his apartment. At 2056hrs a second [male individual] on a bike arrived and threw rocks at Joe Fitzgerald's apartment. An unknown [African American male] exited apartment #10 and let [the person on the bike] into the apartment. This party stayed for approx. 3 minutes and left.

On 3-20-12 Investigator Mayo conducted surveillance at 1609 D. Street and from 2000hrs to 2110hrs Investigator Mayo observed 10 individuals arrive either on foot or in a vehicle. Investigator Mayo observed Joe Fitzgerald come down to the rear entry door to 1609 D. Street and let all these individuals in. These individuals stayed for a couple of minutes each and then left the apartment. Investigator Mayo [identified one of the

individuals as a person who] has contacts with narcotics and [who] was cited for deliver[y] of [a] controlled substance in 2006.

At the end of his affidavit, Investigator Cronin stated his belief that the investigation of 1609 D Street, apartment No. 10, had yielded facts which constituted probable cause to search the apartment, as well as all of the individuals located within the apartment. The county court issued the search warrant.

Prior to trial, Pittman filed a motion to suppress all of the evidence obtained during the search of 1609 D Street, apartment No. 10, which was conducted pursuant to a search warrant granted on the basis of the above affidavit. At the hearing on Pittman's motion to suppress, he argued that the search warrant was invalid because "there were material omissions or misrepresentations in the affidavit that was used in order to obtain the warrant." During the suppression hearing, Pittman called Investigators Cronin and Mayo to testify concerning the events described in the affidavit in support of the search warrant. After the hearing, the district court entered an order overruling Pittman's motion to suppress. In the order, the court stated:

[T]he court finds that [Pittman] has not made a sufficient preliminary showing that there were any false statements made knowingly and intentionally, or with reckless disregard for the truth, by the affiant in his affidavit for the search warrant. Accordingly, this court finds that no further hearing is required to further challenge the truthfulness of any factual statements made in the affidavit.

The court has further considered the affidavit for the search warrant in this case. The court finds that there was sufficient probable cause contained within the affidavit for the issuance of a search warrant.

### (b) Standard of Review

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012). Regarding historical facts, we review the trial court's findings for clear error. *Id*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

### (c) Analysis

On appeal, Pittman argues that the district court erred in overruling his motion to suppress all of the evidence obtained as a result of the search warrant executed on March 20, 2012, at 1609 D Street, apartment No. 10. He argues that there were material misrepresentations and omissions in the affidavit in support of the search warrant and that, as a result, the search warrant was not supported by probable cause and the search was ultimately invalid. Pittman's specific assertions with regard to the affidavit include the following: (1) that the affidavit failed to include information about where the vehicle followed by officers on February 23 traveled to before stopping at 1609 D Street; (2) that the affidavit did not indicate that the affiant was not present during the surveillance conducted on March 7 and did not state that during this surveillance none of the individuals who visited 1609 D Street, apartment No. 10, were stopped and questioned; (3) that the affidavit failed to indicate that further surveillance was done at 1609 D Street on March 8, but there was no evidence of any drug activity observed; and (4) that the

affiant dated the affidavit "March 9, 2012," but there was information in the affidavit that occurred after that date.

Before we address Pittman's specific allegations, we begin with some general propositions of law that relate to search warrants.

A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. Sprunger, supra*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *Id*. The magistrate who is evaluating a probable cause question must make a practical, commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity of and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002). In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test. See *State v. March*, 265 Neb. 447, 658 N.W.2d 20 (2003).

In this case, Pittman focuses his argument regarding the sufficiency of the affidavit in support of the search warrant on his allegations that Investigator Cronin misrepresented material facts and omitted other, material information. In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the U.S. Supreme Court indicated that in order to invalidate a warrant on the basis of material misrepresentations, a defendant must show both that the affiant made a deliberate falsehood or acted with reckless disregard for the truth and that the challenged representation is "material," that is, necessary to a finding of probable cause. See *State v. Shock, supra*. The Nebraska Supreme Court has held that omissions in an affidavit used to obtain a search warrant are considered to be misleading when the facts contained in the omitted material tend to weaken or damage the inferences which can logically be drawn from the facts as stated in the affidavit. *Id*.

We now address Pittman's specific allegations concerning the affidavit in support of the search warrant.

*(i) Investigation Conducted*
*on February 23, 2012*

Pittman first alleges that Investigator Cronin omitted material information from the affidavit when he failed to include information about where a vehicle which police were following on February 23, 2012, visited prior to stopping at 1609 D Street. Pittman asserts that if such information had been included in the affidavit, the inference that the occupants of the vehicle had purchased any narcotics from 1609 D Street would be weakened or damaged. Pittman's assertion is without merit.

A careful review of the affidavit reveals that it, in fact, does include information about where the vehicle followed on February 23, 2012, traveled to prior to stopping at 1609 D Street. Investigator Cronin stated in the affidavit, "Investigators followed this vehicle and observed it to stop at numerous locations that are all currently being investigated for the sale of narcotics. After this vehicle left these locations [it] travel[ed] directly to the alley parking lot of 1609 D. Street."

Furthermore, the affidavit does not specifically indicate that the occupants of the vehicle obtained any narcotics from 1609 D Street. Rather, the affidavit states that this vehicle traveled to numerous locations where police believe narcotics are sold; that the vehicle also traveled to 1609 D Street; and that after stopping at 1609 D Street, the vehicle was stopped and its occupants were in possession of cocaine. There is nothing to suggest that Investigator Cronin included any misrepresentation or failed to include any material information in the affidavit about the investigation conducted on February 23, 2012.

Pittman also alleges that Investigator Cronin included assertions that were made in reckless disregard for the truth when he detailed information about the investigation conducted on February 23, 2012. Pittman asserts that Investigator Cronin indicated that the occupants of the vehicle being followed obtained narcotics from apartment No. 10 when they entered 1609 D Street, when in fact, Investigator Cronin did not know which apartment the individuals entered. Pittman's assertion is without merit. Investigator Cronin did not state which apartment the individuals entered on February 23. Instead, he stated that the driver and a passenger of the vehicle "entered the rear of 1609 D. Street."

*(ii) Investigation Conducted*
*on March 7, 2012*

Pittman alleges that Investigator Cronin "acted with reckless disregard for the truth with regard [to] material statements and omissions" when he reported on the surveillance conducted at 1609 D Street on March 7, 2012. Brief for appellant at 13. First, Pittman asserts that Investigator Cronin failed to indicate in the affidavit that he was not present for the surveillance and that he was merely reporting information he received from other officers. Contrary to Pittman's assertion, the affidavit does indicate that it was Investigators Mayo and Schmidt, and not Investigator Cronin, who conducted the surveillance on March 7. Pittman does not allege that the information provided to Investigator Cronin by Investigators Mayo and Schmidt about the surveillance was incorrect or misleading. And, it has long been held that observations by fellow officers engaged in a common investigation are a reliable basis for a search warrant. See *State v. Bockman*, 11 Neb. App. 273, 648 N.W.2d 786 (2002).

Pittman also alleges that Investigator Cronin displayed a reckless disregard for the truth when he failed to include in the affidavit that none of the individuals who were observed to have visited 1609 D Street on March 7, 2012, were stopped and questioned by police about why they were at the apartment building.

Because the evidence presented at the suppression hearing revealed that police did not stop or question any of the visitors to 1609 D Street on March 7, 2012, there was no additional information to include in the affidavit about the surveillance conducted on that day. As such, there is simply no evidence that Investigator Cronin intentionally omitted any material information or that he acted with reckless disregard for the truth.

In the affidavit, Investigator Cronin details the observations of Investigators Mayo and Schmidt from March 7, 2012. On this date, the investigators conducted surveillance of 1609 D Street. This surveillance operation appears to have been precipitated, at least in part, by a tip received by police from a citizen informant a few days prior to the surveillance. The tip indicated that numerous individuals were visiting 1609 D Street and shouting for someone named "Joe."

An older, African American male would then come down, permit the individuals to enter the apartment complex, and then the individuals would leave a few minutes later. The surveillance conducted on March 7 revealed the same type of activity as reported in the tip. Multiple individuals were visiting the apartment building for very brief periods of time, and some of those individuals were calling for "Joe."

At the suppression hearing, Investigators Cronin and Mayo testified that none of the individuals who visited the apartment building on March 7, 2012, were stopped by police that night. Instead, Investigators Mayo and Schmidt merely observed the activity going on in the building. Investigator Mayo did testify that officers attempted to stop a few of the visitors for questioning, but they "got away."

Based on the evidence presented at the suppression hearing, it is clear that Investigator Cronin reported all of the activity observed during the surveillance conducted on March 7, 2012, within the affidavit. Because there was no further investigation of the visitors to that apartment building, there was nothing more to report. Pittman's assertion that Investigator Cronin should have specifically reported that officers did not contact the visitors to the apartment building during the surveillance operation is simply without merit. An affiant need not report everything that did not happen during an investigation.

### (iii) Investigation Conducted
### on March 8, 2012

Pittman alleges that Investigator Cronin omitted material information from the affidavit and acted with reckless disregard for the truth when he failed to include in the affidavit that surveillance of 1609 D Street was conducted on March 8, 2012, but did not produce any evidence of buying or selling narcotics. This assertion also lacks merit. Given all of the information contained in the affidavit, it is clear that the information about the March 8 surveillance was not "material" in nature. Even if such information had been included, it would not have significantly diminished the probability that there was narcotics trafficking occurring at 1609 D Street or that a search of apartment No. 10 would reveal evidence of that narcotics trafficking.

### (iv) Date Affiant Signed Affidavit

The affidavit indicates that Investigator Cronin signed it on March 9, 2012. However, the affidavit also indicates that it was "subscribed . . . and sworn to" before a county court judge on March 20. Moreover, the affidavit includes information about surveillance that was conducted at 1609 D Street on March 20. Pittman alleges that the inclusion of information about the investigation on March 20 was a "misrepresentation of material fact" because such information occurred after Investigator Cronin apparently signed the affidavit. See brief for appellant at 14. Pittman's assertions are without merit.

Although the affidavit clearly indicates that Investigator Cronin signed the document on March 9, 2012, it also indicates that the contents of the affidavit, including the information about the March 20 surveillance, were sworn to in front of a county court judge on March 20. There is nothing in the record to indicate that Investigator Cronin intended to mislead the county court or acted with a reckless disregard for the truth when he dated his signature March 9. At most, we

could say that Investigator Cronin was negligent either by including additional information in the affidavit after he had already signed it or by simply putting the wrong date on the document. However, allegations of negligence or innocent mistake are insufficient to overcome the presumption of validity with respect to affidavits offered in support of a search warrant. See *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

In addition, we note that even if we were to exclude the information about the surveillance conducted on March 20, 2012, the affidavit would still contain sufficient facts to establish probable cause for the search warrant. The affidavit indicates that on March 20, officers observed similar activity at 1609 D Street as they had observed on March 6. Multiple people visited Joe Fitzgerald at the apartment building and stayed for only short periods of time. Such evidence was not essential to the issuance of the search warrant.

We conclude that the district court did not err in finding that Pittman failed to demonstrate that Investigator Cronin included any false or misleading statements, made knowingly and intentionally, or with reckless disregard for the truth, in his affidavit for the search warrant. In addition, we affirm the district court's conclusion that there was probable cause for the issuance of the search warrant for 1609 D Street, apartment No. 10. Accordingly, we find Pittman's assertions concerning the validity of the search and requesting suppression of all of the evidence seized during the search to be without merit.

## 2. SUFFICIENCY OF EVIDENCE

Pittman alleges that the State presented insufficient evidence to prove that he had been in possession of a controlled substance and that he was a habitual criminal. Upon our review, we conclude that the evidence was sufficient to support the convictions.

### (a) Standard of Review

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009).

### (b) Possession of Controlled Substance

Pittman was charged with and convicted of being in possession of cocaine, a Schedule II controlled substance, pursuant to § 28-416(3). Section 28-416(3) provides:

> A person knowingly or intentionally possessing a controlled substance, except marijuana[,] unless such substance was obtained directly or pursuant to a medical order issued by a practitioner authorized to prescribe while acting in the course of his or her professional practice, or except as otherwise authorized by the act, shall be guilty of a Class IV felony.

The evidence adduced at trial, when viewed in the light most favorable to the State, was that on March 20, 2012, the Lincoln-Lancaster County narcotics task force executed a search warrant at 1609 D Street, apartment No. 10. When the police entered the apartment, they observed Pittman and another individual rush toward the bathroom. Police followed Pittman into the bathroom and placed him in handcuffs. Police then searched Pittman and discovered in his right front pants pocket a baggie which contained 5.21 grams of cocaine. During a subsequent interview with police, Pittman did not deny that the cocaine was found in his pants pocket during the search. He did state that the cocaine was not his, but that an hour prior to the search of the apartment, someone gave him the cocaine to hold. This evidence is sufficient to support Pittman's conviction of possession of a controlled substance beyond a reasonable doubt.

On appeal, Pittman argues that the evidence presented by the State is not sufficient to prove his guilt beyond a reasonable doubt because such evidence was a result of "the illegal search conducted during the late evening of March 20, 2012," and, thus, should have been excluded. Brief for appellant at 16. Pittman's argument is without merit. As we discussed in great detail above, there was probable cause to issue the search warrant for 1609 D Street, apartment No. 10. The search was proper, and the district court was correct to overrule Pittman's motion to suppress all of the evidence seized incident to that search.

(c) Habitual Criminal Determination

Pittman also alleges that the district court erred in determining that he was a habitual criminal. Specifically, Pittman argues that there was insufficient evidence presented to prove that he was the same individual who had previously been convicted of the felony offenses referred to in the certified documents offered by the State at the enhancement hearing. Pittman's assertion has no merit.

Nebraska's habitual criminal statutes provide for enhanced mandatory minimum and maximum sentences for a convicted defendant who "has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state . . . for terms of not less than one year." § 29-2221(1). The statutes further provide:

> At the hearing of any person charged with being a habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

Neb. Rev. Stat. § 29-2222 (Reissue 2008).

In a proceeding to enhance punishment because of prior convictions, the State has the burden of proving such prior convictions by a preponderance of the evidence. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). In a habitual criminal proceeding, the State's evidence must establish with requisite trustworthiness, based upon a preponderance of the evidence, that (1) the defendant has been twice convicted of a crime, for which he or she was sentenced and committed to prison for not less than 1 year; (2) the trial court rendered a judgment of conviction for each crime; and (3) at the time of the prior conviction and sentencing, the defendant was represented by counsel or had knowingly and voluntarily waived representation for those proceedings. *Id*.

A prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence, including the oral testimony of the accused and duly authenticated records maintained by the courts or penal and custodial authorities. *Id*. In addition, the Nebraska Supreme Court has previously held that an authenticated record establishing a prior conviction of a defendant with the same name is prima facie evidence sufficient to establish identity for the purpose of enhancing punishment and, in the absence of any denial or contradictory evidence, is sufficient to support a finding by the court that the accused has been convicted prior thereto. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989).

During the enhancement hearing, the State introduced three exhibits to demonstrate that a "Jariel A. Pittman" had been twice convicted of a felony offense and sentenced to more than 1 year in prison for each conviction. Pittman argues that the State has failed to prove that he is the same "Jariel A. Pittman" as the one who was convicted in these cases. Pittman does not argue that the defendant in the above exhibits was not represented by counsel during the earlier convictions. Nor does he argue that the defendant was not committed to prison for at least 1 year for these earlier convictions. His sole argument is that the State did not sufficiently prove that he was the person convicted for the previous felony offenses.

We first note that Pittman is referred to in court records before this court as "Jariel A. Pittman." In addition, in the presentence investigation report prepared prior to Pittman's sentencing hearing, his date of birth is reflected as being on a specific date in February 1980.

At the enhancement hearing, the State offered certified documents which demonstrate that a "Jariel A. Pittman" with the same date of birth in February 1980 pled guilty to a charge of delivery of a controlled substance, a Class II felony, in Lancaster County in November 2008 and was subsequently sentenced to 18 to 36 months in prison. The State also offered documents which demonstrate that a "Jariel A. Pittman" pled no contest to a charge of cruelty to animals, a Class IV felony, in Douglas County in July 2004 and was subsequently sentenced to 20 to 24 months in prison. These documents do not indicate a date of birth for the defendant. The State also offered a collection of certified documents from the Nebraska Department of Correctional Services. Such documents are all in reference to a "Jariel A. Pittman" with the same date of birth in February 1980. These documents reflect that a "Jariel A. Pittman" served more than 1 year in prison for each of two felony offenses: delivery of a controlled substance and cruelty to animals. These documents also include fingerprints for a "Jariel A. Pittman" and photographs of a "Jariel A. Pittman."

Pittman does not deny that he is the "Jariel A. Pittman" referred to in the State's exhibits. Nor did he present any evidence to demonstrate that he was not that person. Pittman simply argues that the State has not met its burden. We disagree.

The name of the defendant in the two prior convictions is "Jariel A. Pittman" and thus matches Pittman's name. Because Pittman has not denied that he is the person referred to in these earlier convictions and has not presented any evidence contradicting the State's position, the State provided prima facie evidence sufficient to establish Pittman's identity as the person who committed the previous felony offenses. See *State v. Sardeson, supra*. Additionally, the State's evidence demonstrated that the date of birth for the "Jariel A. Pittman" who was previously convicted of the felony offenses matches Pittman's date of birth as reported in the current presentence investigation report. And, the photographs of the "Jariel A. Pittman" who

was previously convicted of two felony offenses which were contained in the State's evidence appear to match a photograph of Pittman contained in the current presentence investigation report. The State has proved the prior convictions by a preponderance of the evidence, and Pittman's assertion to the contrary is without merit.

### 3. EXCESSIVE SENTENCE

Pittman's final assignment of error is that the district court erred in imposing an excessive sentence. Upon our review of the record, we conclude that Pittman's assertion has no merit. The sentence is clearly within statutory limits, and the court did not abuse its discretion in imposing the sentence.

### (a) Standard of Review

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Balvin*, 18 Neb. App. 690, 791 N.W.2d 352 (2010). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

### (b) Analysis

After finding Pittman to be a habitual criminal, the district court sentenced Pittman to 10 to 20 years' imprisonment. This sentence is clearly within the statutory limits.

Pittman was convicted of being in possession of a controlled substance, a Class IV felony, punishable by up to 5 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). However, Pittman was also convicted of being a habitual criminal. As a result of the habitual criminal conviction, the sentence for Pittman's possession conviction is covered by § 29-2221(1). The statutory limits under this section are 10 to 60 years' imprisonment. Pittman's sentence clearly falls within these statutory limits and, in fact, falls at the lower end of these statutory limits.

On appeal, Pittman argues that the sentence is excessive even though it falls within the statutory limits, because the district court failed to consider that Pittman's offense was nonviolent in nature and failed to consider that Pittman had expressed a desire to make changes in his life. In addition, Pittman argues that the court should not have sentenced him to the same term of imprisonment as Fitzgerald, the resident of 1609 D Street, who police suspected of selling narcotics and who was also arrested as a result of the search warrant executed on March 20, 2012. Pittman asserts that the district court should have sentenced him to the absolute minimum term possible, 10 years' imprisonment.

In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *State v. Nelson*, 276 Neb. 997, 759 N.W.2d 260 (2009). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding a defendant's life. *Id*. In imposing a sentence, a judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the

amount of violence involved in the commission of the crime. *State v. Davis*, 277 Neb. 161, 762 N.W.2d 287 (2009).

At the sentencing hearing, the district court indicated that it had reviewed the "pre-sentence report." In addition, during the hearing, Pittman's counsel spoke extensively about the nature of Pittman's offense and about his desire to make changes to his life. Ultimately, the district court found that given "the nature and circumstances of this crime and the history, character and condition of . . . Pittman, and based on the law," a sentence of 10 to 20 years' imprisonment was appropriate. Based on our review of the record, we find no evidence to indicate that the district court did not properly consider all of the relevant factors in imposing Pittman's sentence. Instead, it appears that the court considered all of the information contained in the presentence investigation report as well as the nature and the circumstances of the current offense. Given the nature of this offense and Pittman's criminal history, we cannot say that the court abused its discretion in sentencing Pittman.

We also note that there is nothing in our record to indicate whether Fitzgerald was ultimately convicted of any criminal charges as a result of his arrest during the execution of the search warrant or what sentence was imposed on him as a result of any such conviction. In addition, there is nothing to provide us with any information about Fitzgerald's criminal history or about his unique circumstances. As such, we cannot address Pittman's assertions concerning whether he should have received the same sentence as Fitzgerald. And, even if we could address such assertions, the issue in reviewing whether an imposed sentence is appropriate is whether the defendant in question received an appropriate sentence and the mere fact that a defendant's sentence differs from those which have been issued to coperpetrators in the same court does not, without more, make the imposition of the defendant's sentence an abuse of discretion. See *State v. Guida*, 230 Neb. 961, 434 N.W.2d 522 (1989).

## V. CONCLUSION

Upon our review, we affirm Pittman's convictions for being in possession of a controlled substance and for being a habitual criminal. In addition, we affirm the sentence imposed on Pittman as a result of these convictions. We find that the district court properly overruled Pittman's motion to suppress all of the evidence obtained as a result of the execution of the search warrant on March 20, 2012, and that there was sufficient evidence to support his convictions. We also find that the district court did not abuse its discretion in sentencing Pittman to 10 to 20 years' imprisonment, a sentence which is clearly within the statutory limits.

AFFIRMED.